THOMAS VAN BUSKIRK *v.* MARSHALL O. ROBERTS.

The ticket issued to a passenger for his passage from New York to San Fran-
cisco, does not preclude the party from showing by parol testimony a contract
for such transportation.

And though two tickets — one from New York to Chagres in one steamer, and
one from Panama to San Francisco in another — be issued, it does not show
thereby more than one contract of transportation from New York to San
Francisco.

A party being a part owner of the line of steamers from New York to San
Francisco, can bind himself as principal in a contract for the transportation of
passengers over such line; and such contract may be proved by circumstances,
notwithstanding the passenger received separate tickets for separate vehicles
in the line.

A contract independent of that expressed in the ticket, may be proved and sub-
mitted to the jury.

The party contracting for the transportation of passengers is liable for damages
arising from unreasonable delay along the route, occasioned by the fault or
neglect of those legitimately engaged in the line of transportation.

Thus, a party who has engaged transportation over the line from New York to
San Francisco, and who is unreasonably detained at Panama by the default of
the transportation company, and is thereby specially damaged, as by sickness,
loss of journey, &c., may maintain his action for damages consequentially sus-
tained.

APPEAL from a judgment of the Supreme Court.

The complaint alleged for cause of action, that on the 24th
May, 1850, the defendant being a carrier of passengers for
hire, between New York and California, for a reasonable
reward paid him by the plaintiff, contracted and agreed to
and with the plaintiff to carry and convey the plaintiff and
his two men, Moses Miller and Stephen Shackell, from the
city of New York to the city of San Francisco (except across
the isthmus from Chagres to Panama), and to provide suita-
ble boats and accommodations, and comfortable and whole-
some food and fare for the plaintiff and his men, and to
carry and convey them with safety and speed, and without
unreasonable delay; but that the defendant neglected and
refused to carry them with reasonable diligence and speed,
and to provide them with suitable accommodations and
wholesome and sufficient food, by means whereof the plaintiff

and his men were detained at Panama for the space of six weeks, and the plaintiff was made sick and diseased, so that he was obliged tc abandon his journey and return to New York; that his men, aforesaid, were detained and made sick, in consequence of which the plaintiff lost his time and the money he paid, so as aforesaid, that is to say: The sum of $200 paid by the plaintiff to the defendant for his passage, the sum of $50 for his passage from Panama back to New York, and also the time and services of his men for the space of about two months, to the value of $1,000, and was put to great expense and charges by reason of his sickness, aforesaid, and hath wholly lost his time and greatly suffered, by reason of his said sickness, to his damage in all of $2,000.

The defendant answered: That he was a part owner and agent of the steamship Ohio, and other steamships which were engaged in the business of carrying passengers and freight between the ports of New York and Chagres, and that he was also, at the same time, agent of the steamship Republic, and other steamships which were engaged in the business of carrying passengers and freight between the ports of Panama and San Francisco; and denied that he was a common carrier of passengers for hire, except as expressly stated. And as to each and every other allegation in the complaint, the defendant says he has no knowledge or information sufficient to form a belief.

The cause came on for trial before Mr. Justice EMOTT and a jury, at the Dutchess Circuit Court in March, 1858. The plaintiff gave evidence tending to prove that in May, 1850, one James R. Birdseye, as his agent, contracted with the defendant to transport the plaintiff and his two men from New York to San Francisco at the price of $200 each. The defendant agreed that there should not be over five or ten days delay at the Isthmus, and that the accommodations on board the vessel should be "good farmer's fare." The price of the passage was paid in advance, and two tickets were issued to each of the three persons, one for $50 passage on the steamship Ohio from New York, and the other $150 for passage in the steamship Republic from Panama to San

Francisco. The parties sailed from New York in the Ohio, on the 28th May, 1850, she having about 450 passengers. The vessel reached Havana on the 6th June, 1850, and there certain of the passengers, including the plaintiff and his men, were transferred to the steamship Falcon, a much smaller vessel than the Ohio, and having about double the number of passengers. The plaintiff's evidence tended to show that the board and fare on the Ohio were not according to the agreement. That the provisions were bad, not well or regularly served, and cooked in sea water. The lodging was not good. On the Falcon it was still worse. On the part of the defendant there was evidence tending to show that the accommodations for passengers in both vessels were good.

It apeared that the Falcon arrived at Chagres on the 12th June, 1850, and on the 17th June the plaintiff and his men arrived at Panama. The plaintiff was then in good health. He remained at Panama from the 17th of June to the 25th or 27th July, 1850, when, under the advice of a physician, he started for home. After he had been at Panama about two weeks he was taken with the Panama fever, and continued ill when he started for New York, and was ill on the return passage. He was so ill when he started from Panama home, that he could not get upon the back of a mule without assistance, and required an attendant as far back as Cruces He was unable to go on to California on this account.

When the plaintiff was at Panama, the Columbus, a vessel of the line, ran from there to San Francisco, but the plaintiff was then sick, and his ticket being for the Republic he could not get passage. The plaintiff left Panama, to return home, about the 25th July. No steamers of the line arrived at Panama within ten days after the plaintiff reached there.

The Republic sailed for San Francisco on the 27th July. The plaintiff paid all his expenses on the Isthmus, his fare back to New York, besides losing his time, and the $200 for his passage out.

At the close of the plaintiff's testimony the defendant moved for a nonsuit, which was denied.

The defendant claimed on the trial that he made no con-
tract whatever with the plaintiff, but that the contract made
was with Birdseye, and by him assigned to the plaintiff, and
that if any was made with the plaintiff, it was not a single
contract for a passage from New York to San Francisco, but
that two separate contracts were made, one to carry from
New York to Chagres in the Ohio, and the other to carry
from Panama to San Francisco in the Republic, and this
was mainly rested on the fact that separate tickets were
issued for the passage in the Ohio and in the Republic,
which was claimed to be the only legitimate evidence of the
contract between the parties.

The judge submitted these questions as questions of fact
to the jury, and the defendant excepted.

The jury were also instructed that if they found the
contract to have been as the plaintiff alleged, they must
determine whether it had been broken by the neglect to
furnish proper fare and accommodations on the Ohio and the
Falcon, and by the detention of the plaintiff at Panama;
and it was left to the jury to say whether the detention of
six weeks at Panama was reasonable or not; and if unreas-
onable then the contract had been broken. If they find the
contract broken, then the plaintiff was entitled to recover as
damages the $200 paid for passage money, the expenses of
returning from Panama, and his expenses while at Panama.

The jury was also instructed that if the plaintiff's sick-
ness was caused wholly by his wrongful detention at Panama
the plaintiff was entitled to damages on that account.

To these instructions the defendant excepted.

The counsel for the defendant then submitted twenty-one
separate propositions, upon which the judge was requested
to charge; some of which were charged, and as to some the
request was refused. Of those which the judge refused to
charge, but three are now insisted on, viz. :

16. If the owners and officers of the Republic were guilty
of no negligence or laches in their efforts to bring that
steamer to Panama in season to meet the passengers of the
Ohio on her voyage on the 28th May, 1850, and lost no time

voluntarily or by their own fault on the way, the defendant is excused from liability for the delay on her arrival in Panama.

17. That the defendant is not liable for any loss or suffering sustained by the plaintiff in consequence of his illness at Panama.

18. If the jury believe that, at the time the plaintiff abandoned his journey and started on his return to New York, the Republic was at Panama ready to convey him in the ordinary course of her voyage thence to San Francisco, the abandonment of the journey was voluntary on his part, and excused any further performance by the defendant.

On the trial, after giving evidence to show that the defendant was not part owner of the steamers on the Pacific side, it was proposed to prove in what capacity the defendant was acting in selling tickets for the Republic, and the evidence was rejected.

The jury found a verdict for the plaintiff for $950 damages, and, from the judgment entered on this verdict, the defendant appealed.

*J. H. Reynolds*, for the plaintiff.

*E. Pierrepont*, for the defendant.

WRIGHT, J.   The complaint alleged a contract with the defendant to carry the plaintiff from New York to San Francisco, in California, with diligence and without unreasonable delay, and in the transit (except across the isthmus from Chagres to Panama) to provide suitable boats and accommodations, and comfortable and wholesome food and fare.   The judge refused to nonsuit at the close of the plaintiff's case, and upon the evidence adduced, submitted the question to the jury, whether such a contract had been made, and if made as alleged, whether it had been broken by defendant. It is upon this refusal to nonsuit that the principal questions in the case arise.

. I think it was not error to refuse the nonsuit.   It is not claimed, if there was evidence of an agreement to transport

the plaintiff as a passenger from New York to San Francisco, proper to be submitted to the jury. The defendant contends that there was no evidence of any contract whatever between the defendant and the plaintiff, but that if any was made with the latter, it was not a single contract for a passage from New York to San Francisco, but two separate contracts; one to carry from New York to Chagres, in the steamer Ohio, and the other to carry from Panama to San Francisco, in the steamer Republic. The first of these grounds rests upon the assumption that whatever verbal contract was proven, was between the defendant and James R. Birdseye; the second, upon the ground that two tickets were issued for passage in the Ohio and the Republic, which were the only legitimate evidence of any contract between the plaintiff and defendant. Neither of these grounds are maintainable. It is entirely certain from the evidence, that the contract of the defendant was not made with Birdseye in any other way than as the agent of the plaintiff, and this the defendant knew; and the tickets received for the passage were not the only proper evidence of the defendant's agreement; nor did they preclude the plaintiff from showing, by parol testimony, a contract with him to carry for the entire route. This point was distinctly adjudged in *Quimby* v. *Vanderbilt,* (17 N. Y., 306.)

Now, what was the evidence bearing on the question of an agreement to carry the plaintiff through to San Francisco? In May, 1850, the defendant was engaged in the transportation of passengers and the United States mail, through from New York, by way of Chagres, to San Francisco. He advertised his line as the "through line to California via Chagres, carrying the U. S. mail." And the advertisement announced to the public that the steamship Ohio would sail on the 28th of May, and that the books were open for passage to Charleston, Savannah, Havana, New Orleans and Chagres, and for through tickets to San Francisco. The plaintiff resided in Ontario county. In May, and some days before the Ohio was to sail, James R. Birdseye (who was also a resident of Ontario county), called upon the defendant at his

office, in New York, to purchase tickets to California for himself, the plaintiff, and others of his neighbors.

Birdseye had the money of the plaintiff in his hands, and was instructed by the latter to buy three tickets for him, if he would not be detained on the isthmus. He stated to the defendant, that the party did not wish to be detained on the isthmus, and would rather wait until they could go direct through. The defendant replied, that they would not be detained over five or ten days; that he expected two vessels to meet them at Panama; but did not mention the names of the vessels, nor where he expected them to come from. He said that the accommodations on board the vessels should be good farmer's fare. The steerage passage to California, in vessels on the Atlantic and Pacific sides, was $200 for each person, and Birdseye procured tickets from the defendant for eight persons — one for himself, three for the plaintiff and four for other neighbors. The price of the passage was paid in advance, and two tickets were issued to each of the persons, one for $50 passage in the Ohio from New York to Chagres, and the other $150 for passage in the Republic from Panama to San Francisco. These tickets were in the form of receipts for passage, and were drawn by the defendant, or under his immediate direction. The defendant stated that he would draw them all to Birdseye, although the latter told him they were for other persons. He attempted to give him the names of the persons for whom he contracted, that they might be put in the tickets, when the defendant suggested that he should take them all in his own name and transfer them to the several persons for whom he received them, and they were filled up accordingly in his own name. The ticket for the Atlantic side of the route was in this form: "U. S. Mail Steamship Ohio, New York, May 24, 1850. Received fifty dollars for the passage of Mr. Birdseye, or bearer, to Chagres, in steerage berth, No. 292. Sails May 28, at 3 P. M. from pier, foot of Warren street, N. R." The defendant's office was No. 118 West street, New York. The ticket for the Pacific side of the route was as follows: "Steamship Republic, office 118

West steet, New York. New York, May 24, 1850. Received one hundred and fifty dollars for the passage of J. R. B., or order, from Panama to San Francisco, in steerage berth No. 333. Good for the first voyage." The plaintiff, with two of his men, for whose passages to California he had furnished the money, sailed in the Ohio on the 28th of May, and reached Chagres on the 12th June, and Panama on the 17th June. The three tickets, procured for him by Birdseye, secured them admission on board of the Ohio and Falcon, two of the vessels, on the Atlantic side, of the defendant's line. No steamers of the line arrived at Panama for more than two weeks after the plaintiff reached there, and the Republic did not arrive there before the 15th July, nor was she ready to sail to San Francisco before the 27th of that month. After the plaintiff had been at Panama about two weeks he was attacked with the Panama fever, which illness continued until he left for home on the 25th July. Whilst he was at Panama the Columbus, a vessel of the line, ran from there to San Francisco, but the plaintiff was then sick, and his ticket being for the Republic he could not get passage.

These were the leading features of the case, and the evidence was mainly undisputed. It was quite enough to render it proper to submit it to the jury to say whether the contract was entire to convey the plaintiff from New York to San Francisco, or whether there were two separate contracts as the defendant contended. Indeed, I think the proof showed clearly that the contract was entire for the whole route. The payment of the passage money through, was of itself strong, if not conclusive evidence. The plaintiff, through his agent, applied to the defendant, who was engaged in the business of carrying passengers from New York to San Francisco, to obtain such passage, and he was promised it for $200 ; fifty dollars for steerage berth and fare on the Atlantic side, and $150 for steerage berth and fare on the Pacific side. He paid, and the defendant received $200 from him, to be transported over the entire route. This price of passage was paid in advance, and corresponded

with the defendant's advertised rates of steerage passage in his line upon the Atlantic and Pacific. The giving of two tickets was not a circumstance to raise a doubt of the entirety of the contract, but if it did, it was for the jury to solve the doubt.

Under a charge that was unobjectionable, the jury found that the defendant contracted, as alleged by the plaintiff, to carry the latter from New York to San Francisco, except across the isthmus from Chagres to Panama. The defendant could make such a contract as principal, though he may have been but part owner of the line, and such contract could be established by the circumstances, notwithstanding the passenger received separate tickets for separate vehicles in the line. These passage tickets are generally to be regarded as tokens rather than contracts, and are not within the rule excluding parol evidence to vary a written agreement. (*Quimby* v. *Vanderbilt*, 17 N. Y. 306.) The circuit judge was entirely right in his charge, that if there were, besides the tickets, a substantial independent contract, the jury might find their verdict on that, notwithstanding it was not expressed in the tickets; that they were not confined to the tickets as evidence, but might find a separate contract, or a contract partly evidenced by the tickets.

The defendant having undertaken to carry the plaintiff from New York to San Francisco, the law imposed upon the former, independent of any special agreement, the duty of carrying the latter through without unreasonable detention, and to furnish him fare, such as was usual and proper for a steerage passenger on the voyage. At the time of the negotiation for passage, and when the contract was made, the defendant represented that the delay at Panama would not exceed five or ten days, yet the plaintiff was detained there about six weeks, without any means being provided for his conveyance to San Francisco. Upon the whole proof, and under instructions to which there was no exception, and of which the defendant certainly had no reason to complain, the judge submitted to the jury the question whether this detention was not without excuse, and constituted a breach

of the contract. The jury found the delay without any excuse. There was no evidence whatever that the position of the steamer Republic was communicated to Birdseye the agent of the plaintiff, or to the plaintiff himself, when the contract was made, or that either knew that the vessel had been sent around from New York to Panama to take her place on the Pacific portion of the line; yet the judge submitted to the jury to say whether that fact had been communicated to the plaintiff when the contract was made, and whether the contract was to use due diligence in bringing her to Panama, intimating that if that was the contract the defendant had used due diligence in bringing the vessel to Panama, and the detention of the plaintiff at that place, under such circumstances, was excused. If either party had reason to complain of these instructions it was the plaintiff. He knew nothing of the Republic having been sent around to take her place in the line. The defendant undertook to carry him with the ordinary speed of transit, and within a reasonable time, and failing to do so, the contract was broken. If the Republic was not at Panama in season, the defendant should have provided another conveyance in her place. This idea of excusing the delay by the non-arrival of the Republic is based exclusively upon the position that the ticket for that vessel expressed the only contract for transit on the Pacific portion of the route.

The jury having found that the defendant contracted to carry over the entire route, and that he had broken his contract, the only remaining question was one of damages. On this subject, the instructions were that the plaintiff was entitled to recover the $200 paid for passage money, the expense of returning from Panama to New York, and his expenses while at Panama. To this extent no objection could be urged, as it was a damage necessarily resulting from a breach of the contract. Indeed, it is not contended that if the plaintiff had, under the circumstances, a right to abandon the contract, these were not proper items of damage. The jury were also further instructed that if, by the misconduct of the defendant, the plaintiff's voyage was

broken up, and he was detained at a sort of pest house, so that merely from that cause he took sick, damages on that account might also be recovered. That the jury must be satisfied that the sickness was caused wholly by the unreasonable detention, and in that case they might compensate the plaintiff for his suffering and expense. The defendant excepted generally to so much of the charge as allowed the jury to award damages for the plaintiff's sickness; and subsequently requested the judge to instruct them, which request was refused, "that the defendant was not liable for any loss or suffering sustained by the plaintiff in consequence of his illness at Panama." This branch of the charge was unobjectionable, cautiously limited as it was. The jury were distinctly told that they could allow nothing for sickness and expenses, except that which directly and immediately resulted from the breach of the contract by the defendant. The evidence was sufficient to authorize the jury to find that the illness of the plaintiff was caused wholly by his detention at Panama; but had there not been evidence in the case to justify the submission of the question to them, no objection of that kind was taken.

Among the numerous propositions submitted to the judge to charge, was the following: "That if the jury believed that at the time the plaintiff abandoned his journey, and started on his return to New York, the Republic was at Panama, ready to convey him, in the ordinary course of her voyage, thence to San Francisco, the abandonment of the journey was voluntary on his part, and excused any further performance by the defendant." The judge had, substantially, charged the converse of this proposition, to which no exception was taken. The Republic reached Panama about the middle of July, but was not ready to sail to San Francisco until the 27th of that month. A fortnight before she arrived, the plaintiff was prostrated by fever, and he continued ill until, on the 25th of July, under the advice of a physician, he left for home. He was so ill when he started from Panama, that he could not get upon the back of a mule without assistance, and required an attendant as far back as

Cruces. He was unable to go on to California on this account, and his physician so advised. The judge's instructions were, that if he had not been unreasonably detained, and he abandoned his journey and started for home after the Republic reached Panama, his abandonment was against him; but after a breach of the contract by the defendant, and an unreasonable detention at Panama, the plaintiff had a right to abandon the contract, and especially, if by the defendant's unreasonable detention his health had been impaired. This was strictly correct. After the defendant had broken the contract, the plaintiff had the right to abandon it; especially, if by such breach the objects of the plaintiff's journey was frustrated, and he disabled by sickness, occasioned by the defendant's wrongful detention, from proceeding. The abandonment of his journey under such circumstances, though the Republic was at the time at Panama, ready to convey him, in the ordinary course of her voyage thence to San Francisco, would be no excuse for the defendant's breach of duty.

On the trial, after giving evidence to show that the defendant was not interested as owner of the steamer Republic, it was proposed to prove in what capacity he was acting in selling tickets for that vessel. The evidence was properly rejected. It was not material, for the defendant was liable for the damages on his contract whether he had any interest as owner in the steamer or not.

I am of the opinion that the judgment should be affirmed. The principal questions in the case are identical with those raised in *Quimby* v. *Vanderbilt (supra)*, and were disposed of at the Circuit in accordance with the principles of that case. The evidence in that case which was held sufficient to authorize a jury to find that the defendant's contract was a single and entire one to carry through, was no stronger than in the present; and there, as here, it was claimed, though ineffectually, that the tickets which the plaintiff received and held for the passage over the several routes, were, in themselves, written evidence of the bargains by which he engaged his passage, and that he was precluded from con-

tradicting them by parol testimony of an entire contract with the defendant.

MULLIN, J. The first error relied on by the appellant's counsel to reverse the judgment, is that the plaintiff should have been nonsuited, because, he says, the plaintiff had no claims against the defendant except such as the law implies from the fact that he held a ticket. This is a great mistake. The tickets would be evidence in the absence of any other proof of a contract to carry the plaintiff. But the plaintiff alleged in his complaint, and has satisfied the jury, and they, by their verdict, have found, an express agreement by the defendant to carry the plaintiff from New York to San Francisco for a consideration paid to the defendant therefor. It was competent for the plaintiff to allege and prove such a contract, and the tickets furnished no evidence inconsistent with it. A check for a trunk, delivered by a railroad or steamboat company to a passenger, is evidence of the receipt of the trunk, and of an agreement to carry it from the place where the trunk is delivered to the place to which the company has agreed to carry the passenger. But the real contract is the one made with the passenger, by which the company bound itself to carry him and his baggage, from some place on its line, to some other place on or beyond its line.

Some stress is laid by the counsel on the fact that the arrangement for the tickets was made with Birdseye, and not with the plaintiff personally. Birdseye says he acted for the plaintiff, and so informed the defendant, who refused to insert the names of the several persons for whom Birdseye acted, because he, (defendant) said it was unnecessary; he, (B.) could transfer them; those for the steamship Ohio ran to B. or bearer, and those by the Republic to B. or order. I am not aware of any law that forbids a passenger to make a contract with a carrier for his carriage to San Francisco or elsewhere through an agent.

The next error complained of, is that there was no breach of the agreement. The jury has found there was, upon

conflicting evidence, and that finding must be deemed con-
clusive. But if it was an open question, I should be
constrained to find on the evidence in this case precisely as
the jury has found—that the passengers on the Ohio and
Falcon were most shamefully imposed upon, not only in the
treatment they received on board such vessels, but in being
induced to go to Panama under the assurance that they
would not be compelled to wait more than ten days when
they were compelled to wait some five weeks—the defendant
knowing, when this representation was made, that it was
impossible for the Republic to reach Panama within much
less time than she actually reached there. It is proved
beyond dispute, that the vessel made a rapid passage in view
of the delays incident to a voyage round Cape Horn. If
the defendant did not know the length of time required to
make this voyage, he had the means of informing himself,
or failing to do that, he should have disclosed the time of
sailing of the Republic from New York and left the passen-
gers to form their own conclusions as to the time of her
probable arrival. By the representations made, and by
omitting from the contract a provision which should relieve
him from liability for the detention of the passengers at
Panama, the law holds him bound to carry the passengers
through with reasonable diligence and dispatch, and that
they would not be detained at Panama, waiting for the
Republic, beyond a reasonable time; and what would be a
reasonable time to wait for her, the jury must determine,
having reference to the representations on that subject made
by the defendant.

Considering that the length of time the plaintiff and others
would be detained at Panama was matter of opinion merely.
Yet the plaintiff's agent made the time of detention at
Panama the subject of discussion with the defendant, saying
to him, that if those for whom he acted were to be detained
any considerable length of time they would wait until the
next steamer. It was in answer to this suggestion that
the assurance was given, and it was then that good faith
demanded that if the defendant meant to impose the conse-

quences of delay on the passengers, he should have informed them the time was matter of opinion merely, and they must wait whatever the length of time might be, for the arrival of the Republic. Under these circumstances he became bound for the consequences of unreasonable delay, and he deemed ten days a reasonable detention at Panama. The jury was justified in adopting that length of time as a criterion by which to determine what would constitute an unreasonable detention.

It is said the delay of the Republic was caused by the act of God, and was not the fault of the defendant. The defendant should have provided for the contingency in his contract, and not having done it he cannot be excused. If the contract had been to carry by the Republic and in no other way, then it is probable the doctrine contended for might apply. But the contract was to carry in a reasonable time, and by the Republic, from Panama if she arrived there in a reasonable time after the plaintiff arrived, if not, then by some other vessel.

This was not a case in which the act of God can be resorted to as an excuse for a neglect to perform a contract. (2 Parsons on Contracts, 184 ; *Barber* v. *Johnson*, 19 Wend. 500 ; *Harmony* v. *Bingham*, 2 Kern. 99.)

These are the only points amongst the multitude raised on the trial deserving of consideration. And as they were properly disposed of, the judgment should be affirmed with costs.

Judgment affirmed.