ALFRED NELSON, RESPONDENT, *v.* THE LONG ISLAND RAILROAD COMPANY, APPELLANT.

*Railroad company — Refusal of passenger to pay fare — removal of — no right to be taken back on tendering fare.*

A passenger having been put off a car for refusing to comply with the rules of the company, cannot demand, as matter of right, to be taken back again upon complying with the rule violated, unless he be at a regular station, and then and there obtain a ticket or tender his fare.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, in an action brought to recover damages for the ejectment of the plaintiff from the defendant's cars, and its refusal to allow him to re-enter the train.

*Robert T. Green,* for the appellant.

*Everett P. Wheeler,* for the respondent.

BRADY, J.:

The plaintiff was ejected from the defendant's cars on refusing to pay his fare. He had purchased in New York an excursion ticket on the 3d of August, 1872, from defendant's ticket agent, to and from Southampton. The ticket was good for three days. When he applied for the ticket, some conversation ensued between him and the agent as to the time for which the ticket would be good, the plaintiff suggesting the Wednesday following, and the agent Monday, the ticket having been purchased on Saturday. The ticket was stamped the "5 of August," which was Monday, and that seems to have been in accordance with the running time for the ticket, Saturday, the day of its issue, being regarded as one of the three days. The agent, when the plaintiff stated his theory of the time, expressed neither assent or dissent, but sold the ticket, stamping it according to the opinion expressed by him, that the time for its use expired on Monday. The conversation mentioned was taken under objection and exception, the defendants claiming that the ticket was a contract, and not subject to alteration by parol evidence. The plaintiff sought, on two occasions to employ the ticket, unsuccessfully, having ridden upon the main road of the defendants and a connecting branch. On the second occasion, he refused to pay his fare other than by the ticket, and was put out of the car. As soon as that was done, and before the car started, he offered to pay his fare, but the conductor refused to accept it, and to allow him to enter the car again. What relation the place at which he was put out of the car bore to dwelling-houses, or to the next station as to distance was, perhaps, in conflict in some respects, but that circumstance is not material in the view that is taken of this appeal. It is quite apparent that the plaintiff was determined to test the accuracy of his opinion as to the length

of time or days for which his ticket could be used, and to place himself in the necessary hostile attitude, to enable him to do so. The agents of the defendants were equally determined to assert their rights in opposition to his views, and did so. The plaintiff was ready to be put out of the car, and the defendants willing to gratify him. On the trial, the learned justice presiding submitted the controversy about the duration of the ticket to the jury, to be disposed of by them as a question of fact, and left them to say whether it expired on the fifth or the seventh of August. He also charged that when the cars were stopped, and the plaintiff ejected, the defendants were bound, then and there, to receive the tendered fare, and to receive back and carry the plaintiff to his destination. There were exceptions duly taken to both of these propositions, and other exceptions were also taken on behalf of the defendants, to which, however, it will not be necessary to allude.

The learned justice was right in declaring that the ticket was not conclusive of the plaintiff's rights. It was only a token or voucher adopted for convenience, to show that the passenger had paid his fare from and to the points named. The court of last resort has sufficiently established this as a rule of law to leave no room to doubt of its existence. (*Quimby* v. *Vanderbilt*, 17 N. Y. Rep., 313, per DENIO, J.; *Rawson* v. *Penn. R. R. Co.*, 48 id., 217, per EARL, C.; *Elmore* v. *Sands*, 54 id., 515.) ·

The plaintiff had the right, therefore, to show that, in a conversation before his purchase from the defendants' agent, he was induced to believe that he could use the ticket on the day when he attempted to do so, and was ejected. The question what the contract really was, as to his transportation, was one, therefore, to be determined by the facts disclosed. The statements of the ticket agent were binding on them. He must be regarded as clothed with all the power necessary to enable him to conduct the business for which he is employed, and for which he is held out by the defendants as their representative. There is no hardship in the rule. When the agent is called upon to act, he must do so, if the defendants wish to protect themselves from liability beyond any desired limit. The agent, with whom the plaintiff dealt, could have said that the ticket was good for Monday only, and thus have prevented suffering, loss and damage. It must be assumed, therefore, that

the rule of law stated, upon the subject considered, was correctly pronounced, and that the exception fails. The conclusion, in regard to the other proposition, is different. If a refractory passenger is put out of the car, and by refractory is meant any one refusing to comply with the rules of the company, which they can lawfully make, he cannot demand, as matter of right, even upon complying with the rule violated, to be taken back again *eo instanti*, unless he is put off at a regular stopping station, and unless, at least, he then and there obtained a ticket or tenders his fare. Railroad companies have rights which the public are bound to respect, and however unwillingly the doctrine may be accepted, are to be treated, in the administration of the laws, precisely as private persons, except when, from public policy or by express enactment, a different rule is prescribed. While such organizations should be held to a strict accountability, they should be protected in their franchise, and facilitated, in all reasonable ways, to make their enterprises successful and safe. It is not to be tolerated that, by a rule of law, passengers should be endangered by the errors or caprice of any one person whom it becomes the duty of a company to carry from one place to another, and especially when it is not essential to the assumed rights of that person, that the peril should be provoked. It was not necessary, for example, for the plaintiff in this action to require the ceremony of stopping the train and of expulsion. It would have saved his rights, if having refused to pay other than by his ticket, he was told that unless he paid he would be put out, and then paid under protest. If a passenger prefer the other course, then he must rely entirely upon the wrong done in putting him out, and upon the absence of any right of the company to eject him his remedy must depend. He cannot present his action in a double aspect, both upon the original trespass upon him, and the subsequent one, as well founded upon the refusal of the company to take his fare at a place not designated for the receipt of passengers or for stoppage, and at which he has, by his own conduct, compelled their train to stop. This right of a passenger, thus to continue in the train, has been considered and determined adversely to the plaintiff. " By refusing to pay the fare demanded, it was the conductor's duty to put McCormick off the cars immediately, with as much expedition as was consistent with his safety, and the

safety and convenience of the other passengers. He had no right to detain or delay the train to dispute with an obstinate passenger about the amount of the fare.

"By refusing to pay the fare demanded, McCormick relinquished his privilege as a passenger, and ceased to have any right in the cars, and the conductor was authorized to put him out as an intruder. It could not be that while the conductor was authorized to put him out of the cars as an intruder, such person could, by his own act, acquire a superior right to remain." (Per MULLETT, J., in *The People* v. *Jillson*, 3 Parker Cr. Rep., 239.) It was held in that case, that the subsequent offer to pay the fare, therefore, did not do away with right to put the passenger out, or impose upon the company the obligation to receive him back and permit him to remain. The same principle was enunciated in *Hibbard* v. *The N. Y. and Erie R. R. Co.* (15 N. Y., 455). Justice DENIO said, in considering the proposition, that if the plaintiff, in that case, had offered to show his ticket, or did show it after the cars had been stopped, in order to put him out for refusing to show it, the conductor should not have persisted in expelling him. This question, like the other, requires a consideration of the peculiar character of this new mode of transporting persons. Railroad trains are now run according to a scheme in which the time required in passing from one point to another, and the time required for the necessary stoppages is accurately calculated. Any derangement or departure from the time fixed, is exceedingly hazardous to the safety of the company's property, and the persons employed in running the train. The most horrible calamities have often been the result of such derangements. And if one passenger, he also said, can, by his unjustifiable humor, cause the cars to stop, another may do the the same thing, and the utmost irregularity may be brought about. The rule, therefore, was, in my judgment, plainly reasonable, which imposed a forfeiture of his right to proceed further on the cars, upon a person who should refuse to show his ticket to a conductor when requested. Having forfeited his right by his improper conduct, it was for the company or its agents to say whether he should be retained, after having occasioned the inconvenience of a stoppage by his pertinacity." The Court of Appeals have also, in the recent case of *Hill* v. *The Syracuse R. C. Co.* (not yet reported), sustained

this doctrine. It may be said, in addition, that if the rule were otherwise declared, it would enable a passenger, so disposed, to pay his fare only on compulsion, and after a train had stopped, repeating the operation between all stopping points along the route of the road. The passenger must, therefore, stand or fall by the right of the company to expel him. If he incur the exercise of this power, he is at the mercy of the company. If they are wrong, they must respond. If he is in error, he must bear the burden of his folly. He cannot, as suggested, create the facts and circumstances out of his own wrong. He must take its consequences, which are expulsion at the will of the company, expressed through its agent, the conductor, and the inconveniences resulting from that incident.

This conclusion renders it necessary to reverse the judgment, because we cannot say on which theory the jury determined the plaintiff entitled to success.

Wheth r upon that relative to the contract as adopted by him, or upon that of the asserted duty of the defendants to accept his fare, offered after the train had stopped. If upon the former, the judgment might be upheld; if upon the latter, it could not be, because the jury might have declared the expulsion justifiable, and the refusal to receive the fare thereafter unjustifiable and injurious. Indeed, the charge was to the effect that the plaintiff was entitled to recover, because the defendants did not deny that the fare was tendered after the expulsion took place, and that fact entitled him, under the law governing it, as pronounced, to transportation in the cars of the defendants, whether his expulsion was lawful or otherwise.

The judgment should be reversed.

DAVIS, P. J.:

I concur in the result. I do not concur in the views expressed by my brother BRADY, in the first proposition discussed by him. I think the learned judge at Circuit should not have submitted to the jury the question whether there was a contract made by the ticket agent with the plaintiff, upon which the latter was entitled to use the ticket on Wednesday. There was no agreement, but a mere disagreement, on that question, and the ticket agent stamped the ticket to return on Monday, in accordance with his views. The

plaintiff accepted the ticket when so stamped, and made no further objection, and he knew thereby that the agent rejected his idea that these days, from and including Saturday, included the following Wednesday. Taking the ticket, with knowledge of such stamp or indorsement, made it in the nature of a contract, to which the act of taking with knowledge was an assent. The case in 54 N. Y.. 512, establishes the correctness of this view. The defendant is entitled to a reversal and new trial on this ground, as well as that secondly discussed by BRADY, J.

DANIELS, J., concurred in this qualification of Justice BRADY's opinion.

Judgment reversed and new trial ordered, costs to abide event.