## COSULICH LINE OF TRIESTE v. BOWERS, Collector of Internal Revenue.

District Court, S. D. New York.

Sept. 10, 1930.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (H. Maurice Fridlund, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (Harry G. Herman, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion by the defendant for judgment on the pleadings. The action is to recover a tax payment made under protest October 10, 1927, and representing passage ticket taxes alleged to have been illegally assessed against the plaintiff. The facts are simple and not in dispute.

On May 27, 1926, the plaintiff, owning and operating the steamship Presidente Wilson, by written agreement, "reserved" for Salaam Temple, a New Jersey membership corporation, "the steamer's full complement of passenger accommodation in all classes" on the steamer Presidente Wilson for a "summer pilgrimage" to Bermuda, from August 25 to August 30, 1926, at a cost, "based on a minimum of 400 passengers," of "a lump net sum of $30,000." The berthing capacity of the vessel was stated to be in excess of 400, and a flat rate of $35 was specified "to cover all passengers booked in excess of the minimum number 400." It was also provided that there should be an initial deposit of $5,000, and the "balance of the total passage money, including passengers booked in excess of 400," should be paid on August 21st, prior to the commencement of the voyage. The agreement further contained the two following clauses:

"(10) *Membership Cards*: It is understood that each guest will be provided by you with a membership card on which will appear the berth and cabin assigned and will be used as identification of the guest on board."

"(12) Contract as drawn up is in ac-

616

cordance with the general terms and conditions of the regular ocean steamship passenger ticket on file in this office and at the disposal of your Committee at all times."

The membership card referred to in clause 10 was issued by Salaam Temple, and was stated on its face to be an "Identification Ticket." It contained the name of the passenger, and the berth and stateroom occupied, and bore the printed signature of "Curtis W. Merrill, Potentate." On the reverse side were a number of conditions and instructions for "passengers," among which was the following:

"While it is the aim of Salaam Temple to give all passengers the best possible service and attention throughout, responsibility must be declined by Salaam Temple for damages or delays on the Pilgrimage, or through imposition of quarantine, customs inspection, or any casualty or untoward incident which may be occasioned by circumstances beyond the control of Salaam Temple. Transportation is furnished by the Cosulich Line in accordance with their general rules."

The tax was assessed under section 800, title 8, of the Revenue Act of 1926 (26 US CA § 901, Schedule A(5), providing in part as follows:

"* * * There shall be levied, collected, and paid, for and in respect of the several * * * instruments * * * mentioned and described in Schedule A of this title * * * by any person who makes, signs, issues, sells, * * * or for whose use or benefit the same are made, signed, issued, sold, * * * the several taxes specified in such schedule."

Schedule A, subdivision 5, reads as follows:

"Passage ticket, one way or round trip, for each passenger, sold or issued in the United States for passage by any vessel to a port or place not in the United States, Canada, Mexico, or Cuba, if costing not exceeding $30, $1; costing more than $30 and not exceeding $60, $3; costing more than $60, $5. This sub-division shall not apply to passage ticket costing $10 or less."

There were 451 persons in the pilgrimage, and the Commissioner, interpreting the agreement as a "passage ticket" for 451 persons, divided the lump sum of $30,000 by 451, and in that way arrived at a figure of about $67 as the cost of passage per person. He thereupon assessed against the plaintiff a passage ticket tax of $5 for each of the 451 passengers, or a total of $2,255, which,

together with $133.30 interest, was paid by the plaintiff to the collector, and now forms the basis of this action.

It is the contention of the plaintiff that the agreement was in no sense a passage ticket within the meaning of the 1926 act, but was a charter of the vessel's "full complement of passenger accommodation in all classes," and that if any ticket tax was properly payable it should have been assessed against Salaam Temple, which had charge of the distribution of the "Identification Tickets" to those making the pilgrimage, and not against the plaintiff.

I think the Commissioner was right in his interpretation of the agreement. The statute imposes a tax "in respect of," "passage ticket, * * * sold or issued in the United States," and directs payment of the tax "by any person who makes, signs, issues, sells" such passage tickets, "or for whose use or benefit the same are made, signed, issued, sold." By the terms of the agreement, the plaintiff disposed of the entire "passenger accommodation" of the vessel for a lump sum of $30,000, provided the number of "passengers" did not exceed 400. It was also provided that there should be a flat rate of $35 for "all passengers" in excess of 400. Clearly, that was an agreement for a bulk sale of passage tickets, even though at the time it was made no standard form of ticket was executed and the number of passengers was left indefinite. The statute does not require any particular form for the ticket; and the number of passengers making the pilgrimage was subsequently accurately determined at 451. The management, control, and operation of the vessel was entirely in the hands of the plaintiff, and the agreement contains nothing to indicate that those making the pilgrimage were to be other than passengers. Furthermore, the issuance of "membership cards" to be "used as identification of the guest on board" was specifically authorized, and the agreement was declared to be "in accordance with the general terms and conditions of the regular ocean steamship passenger ticket." The identification tickets were issued pursuant to the authority of this agreement, and, when taken in connection with the agreement itself, constituted passage tickets within the meaning of the statute; and, as thus construed, they served "as tokens to enable the persons having charge * * * to recognize the bearers as parties who were entitled to be received on board." Quimby v. Vanderbilt, 17 N. Y. 306, 313, 72 Am. Dec. 469. These tickets must be held to have been

issued by the plaintiff as fully as if actually signed in its own name.

I find no fault with the action of the Commissioner in allocating the lump sum of $30,000 among the 451 passengers.

The motion of the defendant to dismiss on the ground of insufficiency of the complaint is therefore granted.