[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 457 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 458 
In my opinion, the learned judge before whom this case was tried committed two capital errors; First. He refused to charge the jury that the plaintiff was bound to conform to the rules and regulations of the company, by showing his ticket to the conductor when requested so to do. As a substitute for this direction, he charged that a passenger was bound to exhibit his ticket when reasonably requested; and he added that if the conductor knew the plaintiff had paid his fare he had no right to expel him from the cars, although he refused to show his ticket. The defendant was entitled to the instruction asked for without qualification.
It was proved that the defendant's company had established a regulation by which passengers were required to exhibit their tickets, when requested to do so by the conductor, and that in case of refusal they might be removed from the cars. If this was a reasonable regulation, the plaintiff was bound to submit to it, or he forfeited his right to be carried any further on the road. In my opinion the rule was reasonable and proper, and in no way oppressive or vexatious. In the first place, it was easy to be complied with. The railroad ticket is a small slip of paper or pasteboard, which may be conveniently carried about the person; and it involves no conceivable trouble for the passenger, when called upon at his seat by the conductor, to exhibit it to him. Then no one can question but that this or some similar arrangement is absolutely necessary for the company, unless they are willing to transport passengers free. A train of railroad cars frequently contains several hundred *Page 459 
passengers, a portion of them constantly changing as the train passes stations where persons are received and discharged. The tickets, which are given as evidence of the payment of fare, are of as many different kinds as there are stopping places on the road; each being for the distance or to the place for which the passenger has paid his fare. The conductor must necessarily be a stranger to all or a large portion of his passengers. Unless he is allowed a sight of these evidences of the payment of fare, whenever he may require it, he is exposed to the chance of carrying the holder of them beyond the place to which he is paid, or of carrying persons who have not paid at all. If the conductor is not allowed to ascertain whether a passenger who has obtained a ticket still keeps it, there is nothing to prevent its being given to another passenger who has not procured one, and thus serving as a passport for several passengers. But it is argued that if the ticket has been once shown to a conductor, the passenger cannot reasonably be required to exhibit it a second time. If the duty of showing it were at all difficult or arduous, it might be a question whether the company would not be bound to devise some easier arrangement; or, if it was possible that the memory and other faculties of persons employed as conductors could be so cultivated that they could know and remember the persons of several hundred people, upon seeing them for the first time, and could, moreover, retain the recollection of the terms of the several tickets held by them upon their being once shown, it might be considered unreasonable to require a second exhibition of a ticket in any case. As this degree of perfection is unattainable in the present condition of mankind, I am of opinion that it was lawful, for this railroad company, to require that persons engaging passage in its cars should show their tickets whenever required by the company's servants intrusted with that duty, upon pain of being left to travel the remaining distance in some other way in case of refusal. I do not think it was correct for the judge *Page 460 
to leave it to the jury, as he did, whether the request to show the ticket a second time was reasonable. The regulation required that it should be shown, when requested by the conductor, and the question for the court to determine was whether that regulation was lawful. (8 Co., 126, b.) The judge would not pass upon that question, but submitted to the jury whether it was reasonable to require a conformity to it on the part of the plaintiff. There was no evidence tending to show that the conductor wished to vex the plaintiff, or put him to inconvenience. After the plaintiff had purchased his ticket and taken his seat, and had once exhibited the ticket, the train had stopped at a station (Wellsville), and had again started on its course. Then the conductor desired to see the ticket and was refused. He may not have been able to remember, if he knew that the plaintiff had paid fare and had a ticket, whether it was for Wellsville or for a place beyond that station; or he may not have remembered his person so as to be able to determine whether he got on at Wellsville, or had come from Hornellsville, or some place further west. True, Mr. Crandall informed the conductor that the plaintiff's fare was paid, and that he had a ticket, and Mr. Crandall may have been known to the conductor to be a truthful person, or he may have been an utter stranger. The company, however, had a test far more convenient to all concerned than the taking of testimony, to wit, the exhibition of their own ticket, which the plaintiff had in his pocket, but which he pertinaciously refused to show.
It is true, the judge put it to the jury to say whether the conductor knew that the plaintiff had paid his fare. Ordinarily the law would hold that what a person knows at one time he should be taken to know and remember at a short distance of time afterwards. The conductor had seen the plaintiff's ticket, and had some opportunity of studying its contents; and under this charge the jury would necessarily find for the plaintiff. The judge made no account *Page 461 
of the peculiarity of the circumstances; of the number of persons the conductor would be obliged, in order to protect the company under this rule, to recognize and remember; of the divers kinds of tickets which must be used, and of the haste with which this business must necessarily be done. It was precisely in consideration of these circumstances that the rule was made, and that it was reasonable and therefore lawful. If the judge had submitted it to the jury whether the conductor knew and remembered that the plaintiff was traveling under a ticket which extended to the place where they then were, and whether his conduct in requiring a second sight of the ticket was caused by a desire to harass the plaintiff, the only objection, so far as I can now see, would have been that there was not the slightest evidence to raise such a question. But this was not the point submitted. It was, whether he knew that the plaintiff had paid; and as he had shortly before seen the authentic evidence of such payment, the jury would necessarily find, as they did, that he had such knowledge.
The other error which I have supposed to exist in the charge is, that the judge held, in effect, that if the plaintiff offered to show his ticket, or did show it, after the cars had been stopped in order to put him out for refusing to show it, the conductor should not have persisted in expelling him. The request assumed that the jury might find that the conductor was right up to that time; and the point decided was that, though this were so, the plaintiff saved the forfeiture by this late compliance with the company's rule. This question, like the other, requires a consideration of the peculiar character of this new mode of transporting persons. Railroad trains are run according to a scheme in which the time required in passing from one point to another, and the time required for the necessary stoppages, is accurately calculated. Any derangement or departure from the time fixed is exceedingly hazardous to *Page 462 
the safety of the company's property and to the lives of the passengers and the persons employed in running the train. The most horrible calamities have often been the result of such derangements. A train of railroad cars cannot be stopped and again set in motion so as to attain its former speed, without considerable delay; and if one passenger, by his unjustifiable humor, can cause the cars to stop, another may do the same thing, and the utmost irregularity may be brought about. The rule, therefore, was in my judgment plainly reasonable which imposed a forfeiture of his right to proceed further in the cars upon a person who should refuse to show his ticket to a conductor, when requested. Having forfeited his right by his improper conduct, it was for the company or its agents to say whether he should be retained after having occasioned the inconvenience of a stoppage by his pertinacity.
There are some other questions in the case which I have not thought it necessary to examine, as those which I have mentioned are necessarily fatal to the judgment. I am in favor of a reversal.