Railroad *v.* Harris.

LOUISVILLE, NASHVILLE & GREAT SOUTHERN R. R. CO.
*v.* GEORGE W. HARRIS.

1. RAILROAD.  *Passenger.*   *Conductor.*   A traveler on a railroad
   train, traveling on a commutation coupon ticket, which provides
   that the coupons shall be void if detached by any other per-
   son than the conductor, and that the ticket shall be shown to the con-
   ductor each trip, who shall detach the coupons for the number of
   miles to be traveled, technically violates the contract by detaching
   the coupons himself.  If, while detaching the coupons, his attention
   be called by the conductor to the fact that it is his duty to detach
   them, the passenger should at once desist, and hand the ticket and
   coupons to the conductor, in which event it would be the duty of the
   latter, if he saw the coupons detached or could readily ascertain by
   inspection that they had been detached from the ticket, to accept
   them.  But the conductor would not be bound to receive the de-
   tached coupons without seeing the ticket.

2. SAME.   *Same.*   *Same.*  If such a passenger refuse to deliver his
   ticket to the conductor on demand, and insist upon making pay-
   ment of his fare with coupons which he has himself detached, it would
   be a violation of the contract by him, for which he may be put off
   the train, with such force as may be necessary, in case he refuse to go
   voluntarily; and he cannot, while being lawfully ejected, regain the
   right to passage by a tender of his fare in a rude, boisterous or insult-
   ing manner.

3. SAME.   *Same.*   *Same.*   The weight of authority is that a passenger,
   who has first violated the contract of passage by a failure to pay his
   fare at the proper time upon demand, cannot, by tendering the fare
   when he is being put off, or upon a re-entry after ejection, acquire a
   right of passage, but the strict rule ought, perhaps, to be confined to
   willful violations of contract.

FROM  CARROLL.

Appeal  in  error  from  the  Circuit  Court  of  Carroll
county.   C. ADEN, J.

Cole & Sweeney for Railroad.

Alonzo Hawkins for Harris.

Cooper, J., delivered the opinion of the court.

Harris brought this action against the railroad company, and recovered damages for being ejected from the train. The company appealed in error.

Harris was traveling as agent for Johnson, Newman & Co., upon a commutation ticket issued to that company for several thousand miles, with coupons attached, and put up in the form of a book. The contract expressly provided that the ticket should be shown to the conductor each trip, who will detach such coupons as would represent the number of miles traveled by the holder on his train, and that the coupons would be void if detached by any one but the conductor. Each coupon stated that it was good for a given number of miles, "when not detached from the contract." The plaintiff says he knew that the coupons were void if detached by any other person than the conductor. He got on the train with the commutation ticket to go to a point named about twenty-four miles distant. When he saw the conductor coming on his round for tickets, he took his book from his pocket, and commenced detaching some of the coupons, when the conductor told him he need not do that, for he would not take them. Plaintiff replied, "I guess you will." The conductor said, "I am employed to do that," and added, "you will pay your fare." Plaintiff replied, "here is my fare," and

offered him the detached coupons. Here there is a
conflict in the testimony as to what took place. The
conductor and another person present say that the
conductor asked for the plaintiff's book, which the
plaintiff refused to let him have, saying that the con-
ductor might put him off and he would sue the com-
pany. The plaintiff, and a witness present also at the
time, deny that the book was demanded, but agree
that angry words were interchanged between the plain-
tiff and the conductor. The colloquy wound up by
the conductor telling the plaintiff that he must get off
at the next station, the plaintiff replying that he would
not, and the conductor replying that he would put
him off. When the train stopped at the next station,
the conductor said to the plaintiff: "This is the sta-
tion and you must get off." The plaintiff replied:
"You will have to put me off." The conductor took
hold of the lapel of the plaintiff's coat and jerked
him up, but immediately released him, and told plain-
tiff to get off the train. Plaintiff said he would not
do it. The conductor then got behind plaintiff and
pushed him along the aisle to the front end of the
car, and out of the front door. On the front plat-
form an acquaintance of the plaintiff was standing, and
plaintiff called upon him to witness that he had ten-
dered his fare to the conductor. The plaintiff, having
his book with the detached coupons in his left hand,
held them out to the conductor, and said to him:
"Here is my ticket, and I tender you my fare," and,
with an oath, "I dare you to put me off." The
conductor then pushed him off the car on to the plat-

form of the depot.   The coupons, it should be added, seem to have been detached by the plaintiff in the presence of the conductor, either wholly or partially.

The plaintiff had a right to be carried to his place of destination in the defendant's train on paying the usual rate of fare on demand, and according to th terms of the contract under which he was traveling. Those terms were that the ticket should be shown to the conductor, who would detach the coupons.   It was a technical violation of the contract, by which the coupons were rendered void, for the plaintiff to detach the coupons himself.   Upon having his attention called to the fact that it was the conductor's duty to detach the coupons, he should at once have desisted, and handed the book and coupons to the conductor.   If he had done so, and the conductor had seen the coupons detached, or could have readily ascertained by inspection that they had been torn from the book, it would have been the duty of the conductor to have received the coupons.   But he was clearly not bound to receive the detached coupons without seeing the ticket or book.   The plaintiff's proof tended to show that the conductor had not demanded the book, and that the book was not tendered to him until, in the process of ejection, the parties had reached the front platform.   The defendant's proof was that the conductor had demanded the book, and the plaintiff had refused to deliver it.   And the remark of the conductor, testified to by the plaintiff himself, "that he must take him for a damned thief," strongly sustains the defendant's version of what occurred, for, otherwise,

the expression would be unmeaning. Be this as it may, the real contest was over what took place before the tender on the front platform, and the effect of that tender. If the plaintiff refused to deliver his ticket to the conductor on demand, or even failed to deliver it when the plaintiff understood that it was virtually demanded according to the usage in such cases, and the plaintiff insisted upon making payment with the coupons which he himself had detached, the contract was broken by him, and he could not insist upon its performance by the company. The conductor had a right to put him off the train, and, upon his refusal to go, to use such force as was required to accomplish that result. In this view, according to the plaintiff's own version of what took place, the defendant might reasonably contend that it was in no wrong, at least up to the tender on the platform. The defendant was entitled to have the jury specially instructed upon the law applicable to such a state of facts. It was also entitled to a special instruction as to the law applicable to the alleged tender.

Upon examining the charge of the court, we find that it lays down the general principles regulating the liability of a railroad company, as a carrier, to a person on its train as a passenger, and the measure of damages for a wrongful eviction. But there is no charge whatever on the special facts of this case. The defendant requested his Honor to give certain special instructions to cover the omission, which he declined to do upon the ground that he had already given them in substance. We are unable to concur with his Honor

in this respect. The charge is in substance that the plaintiff insists that he was wrongfully ejected, while the defendant contends that the plaintiff had violated the contract, and was ejected with no more force than was necessary, and if the jury shall find that plaintiff was wrongfully ejected, their verdict should be in his favor, but otherwise in favor of the defendant. It no where instructs the jury as to the effect of the failure or refusal of the plaintiff to show his ticket to the conductor, and of the tender of coupons detached by himself, where the contract between him and the company required such showing, and that the coupons should be detached by the conductor; nor the effect upon the measure of damages of what took place in the body of the car, upon the supposition, if the jury should so find, that the plaintiff had violated the contract, and that no more force was used than necessary to remove the plaintiff from the cars, he having refused to go. These were the objects of the first three special instructions. The defendant was entitled to have the jury instructed as to the law applicable to these facts, although not necessarily in the exact language of the instructions presented.

The fourth and last special instruction asked by the defendant is as follows: "If, however, you find that the plaintiff tendered the conductor his book on the platform, and did so in an insulting and boisterous manner, cursing the conductor at the time, and the conductor declined to accept the fare tendered in such manner, and ejected him, using no more force than necessary, then the plaintiff cannot recover."

The court declined to so charge, but instructed the jury that it made no difference how the fare was tendered: "whether in a rude, or boisteous or insulting manner, the agent was bound to accept the fare, and you need not consider the manner of the plaintiff in tendering the fare."

If the plaintiff failed to pay his fare at the time, when, according to the regulations of the company, it should have been paid, and upon reasonable demand made therefor, he himself broke the contract, and could not insist upon its fulfillment. And the weight of authority is that, in such case, he cannot, by tendering the fare, when he is being put off, or upon re-entry after ejection, acquire a right to passage: Thomp. on Carr., 340, where the cases are collected in a note. The right, it is said, to refuse to transport the plaintiff further, and to eject him from the train, would be an idle and useless exercise of legal authority, if the party who had hitherto refused to perform the contract by paying his fare when duly demanded, could immediately re-enter the cars and claim the fulfillment of the contract: *O'Brien* v. *Boston, etc., R. Co*, 15 Gray, 20. If one passenger, it has been said, might by his unjustifiable conduct delay the train to put him off, another might do the same thing, and thus the utmost irregularity in the running of the train be produced, jeopardizing the safety of the company's property, and the lives of all on board: *Hibbard* v. *New York, etc., R. Co.*, 15 N. Y., 455; *State* v. *Campbell*, 32 N. J. L., 309; *Fulton* v. *Grand Trunk R. Co.*, 17 U. C., 428. The strict rule thus laid down ought, perhaps, to be

Railroad v. Harris.

confined to willful violations of contract upon proper demand. · It would not apply, as we held in a recent case at Nashville, where the passenger went on board under an honest belief that he could pay his fare in a particular form, and was unable to pay in any other way, and a tender was made by a third person on his behalf while he was being ejected. Nor will it apply where there was an honest, although mistaken assertion of right, when the tender was made by the passenger himself while quietly submitting to the legal right of the company to eject him. But the rule would exist only in name if a passenger who had willfully violated his contract, and compelled the officer of the company to resort to force to remove him, were permitted to obtain the full benefit of the contract by a tardy and ungracious tender, made in a manner to disturb other passengers, and tending to a breach of the peace. A passenger is not entitled at any time to tender his fare in a rude, boisterous and insulting manner, although ordinarily the manner would not be permitted to invalidate the fact. He certainly has no such right when he is being lawfully ejected for a willful breach of contract. Of course, we do not mean to express any opinion on the facts of this case. It is the province of the jury to pass upon them, under a proper charge of the law.

The judgment must be reversed, and the cause remanded for a new trial.