HOMISTON *v.* THE LONG ISLAND RAILROAD COMPANY.

(New York Superior Court—General Term, April, 1893.)

In an action for personal injuries sustained by plaintiff by reason of an alleged assault on him, committed by defendant's employees while he was a passenger upon one of its trains, it appeared that plaintiff boarded defendant's cars at the village of Queens without a ticket, it being impossible for him to procure one before the train started. Before the train arrived at Jamaica, which was the junction of two lines of railroad belonging to defendant, one running to Long Island City, the other to Brooklyn, the plaintiff handed the conductor fifty cents. The fare from Queens to Long Island City or Brooklyn was the same, forty cents. On reaching Jamaica, the train for Brooklyn was standing there. At this time the conductor of the Long Island City train had not returned plaintiff his change or ticket, and plaintiff, wishing to take the Brooklyn train, which left in a few moments, went in search of the conductor and found him just as the Long Island City train was leaving the station. He demanded of the conductor his change and ticket, but the latter had not time to give him either. The conductor of the Long Island City train, however, thereupon shouted to the conductor of the Brooklyn train that he had that man's (referring to plaintiff) ticket, and owed him ten cents change, and that he would settle with the other conductor when he got

back to Jamaica. Plaintiff got into the Brooklyn train, and when in motion, the conductor handed him ten cents and demanded his ticket or fare, and on his refusal to surrender he was ejected from the train by the conductor and brakeman. The court charged the jury "that plaintiff was wrongfully removed from that car, and he should be compensated for the injuries he sustained by reason of the removal; that is, for the injury to his person and to his feelings, if he sustained any." *Held,* that while the question whether plaintiff was wrongfully or rightfully removed was a question of law, it was the province of the jury, upon the evidence, to determine the facts, and it was error for the court to take this question from the jury and to charge that plaintiff was wrongfully removed.

Also *held,* that if the conductor of the Brooklyn train did not have evidence of plaintiff's right to a seat he had the right to eject him, and plaintiff's remedy was against defendant for a breach of contract; that defendant could not be held for an unlawful assault for the act of the conductor in ejecting plaintiff from the train.

APPEAL from judgment entered on verdict of a jury, and from an order denying defendant's motion for a new trial.

*E. B. Hinsdale,* for defendant (appellant).

*William H. Law,* for plaintiff (respondent).

GILDERSLEEVE, J. This action was brought to recover damages for personal injuries sustained by plaintiff by reason of an alleged assault upon him, committed by the employees of defendant, while he was a passenger upon one of defendant's trains on November 21, 1890. On that day the plaintiff boarded one of the trains of defendant at the village of Queens, a small station a few miles east of Jamaica. The ticket office was not open at that station, so that it was not possible for plaintiff to procure a ticket there. He entered a car without a ticket, and just before the train got to Jamaica the conductor in charge of that train asked the plaintiff for his fare. The plaintiff handed the conductor fifty cents. The fare from Queens to Long Island City or to Flatbush avenue, Brooklyn, was the same, forty cents. It was the duty of the conductor to give him ten cents in cash and a duplex ticket, entitling him to a ride to either of these stations, as he might

elect to go. There is some conflict of evidence as to which of these destinations the plaintiff said he was going. The plaintiff alleges that when he was asked where he was going he replied that he was going to Flatbush avenue, Brooklyn, but the conductor testifies that he understood him to say that he was going through to Long Island City. The conductor said, when he took the fifty cents from plaintiff, "I will return you the change and the ticket soon," or words to that effect, and went on. Jamaica is a point of junction of two lines of railroad belonging to the defendant, the one line running to Long Island City, the other line running from Jamaica to Flatbush avenue in the city of Brooklyn. When the plaintiff reached Jamaica the train for Brooklyn was standing there on a track, with a platform between it and the track upon which the Long Island City train pulled into Jamaica. Here passengers are transferred from the one line to the other. When the Long Island City train, upon which plaintiff was a passenger, reached Jamaica, the conductor had not returned with the change or ticket. As the plaintiff wished to take the other train, going to Brooklyn, which left in a few moments, he went in search of the conductor, and found him just as the Long Island City train was leaving Jamaica. He asked the conductor for the change and ticket, but the conductor had not time, as he testifies, to give him either. The conductor testifies that he, said conductor, thereupon shouted to the conductor of the Brooklyn train that "I had that man's (referring to plaintiff) ticket, and owed him ten cents change, and that I would settle with him (the other conductor) when I got back to Jamaica." Plaintiff testifies that the conductor of the Long Island City train shouted to the other conductor: "That is all right. Give him ten cents." The conductor of the Brooklyn train testifies that he only heard the other conductor say "something about giving up ten cents, and I gave ten cents to somebody. I cannot swear to whom I gave it." He also testifies that there was more or less noise and confusion and ringing of engine bells, at the time. The plaintiff got on the Brooklyn train,

which started very shortly after the leaving of the Long Island City train. When the train was in motion, the conductor came along to the seat in which plaintiff sat, and asked plaintiff for his fare. The evidence is conflicting as to exactly what took place then. The plaintiff, who is substantially corroborated by the witness Russell, who was sitting with plaintiff, testifies : " The conductor came through, and said, ' Here is your ten cents ; I don't know what I am giving it to you for.' I said, ' It is the change out of a fifty-cent piece which I gave to the other conductor for my fare to Flatbush avenue.' He said, ' I want your ticket.' I said, ' I have no ticket ; I have paid my fare once.' He said, ' You will pay your fare, or give me a ticket, or you will get off.' I said, ' I will do neither.' " There seems to have been considerable talk, and the conductor appears to have returned several times and renewed his demand. When the train reached Morris Park and came to a standstill, the conductor again asked for plaintiff's fare, and, upon plaintiff's refusal to pay, the conductor, with the assistance of the brakeman, put plaintiff off the train. As to the degree of violence used, there is a conflict of evidence, as plaintiff and Russell testify that plaintiff was roughly handled, while the conductor and the brakeman testify that the removal of plaintiff from the train was accomplished without any unnecessary force or violence. After plaintiff had been removed from the car, he paid his fare, and was allowed to return to the car, and he continued his journey to Brooklyn.

The plaintiff was rightly on the first, or Long Island City, train, and lawfully entitled to ride to Flatbush avenue. A passenger unable to procure a ticket through the fault of the company may take passage on the train, and, upon a tender of the ticket fare, will be entitled to all the rights and privileges that a ticket would afford him. *Chicago, St. L. & P. R. R. Co.* v. *Graham*, 3 Ind. App. Ct. 28. On payment of his fare, the plaintiff's contract was complete in so far as his right to be carried to his destination was concerned. Had the conductor of this train, to whom plaintiff paid the fifty cents

for his fare, ejected him for the reason that he had no evidence that plaintiff had a right to ride on the train, defendant would have been obliged to redress the wrong by the payment of compensatory damages.

If the plaintiff, while on the second or Brooklyn train, did not substantially comply with the reasonable regulations of the defendant, which required him to produce a ticket or pay his fare, or in some other way show sufficient evidence of a right to ride, the conductor of that train was authorized to remove him, and for this act of the conductor he has no claim against the defendant. This proposition may be otherwise stated as follows: Unless the contract relations, established between the plaintiff and the defendant by what occurred prior to the boarding of the Brooklyn train by plaintiff, continued and had the same force and effect in respect of the acts of the second conductor as of the first conductor, and the plaintiff's rights and defendant's obligations were not affected by the plaintiff's change from one train to the other, the plaintiff cannot recover in this action. If the conductor, in the execution of lawful instructions to remove the plaintiff from the car, used unnecessary force and violence, he, the conductor, and not the corporation, is liable for such malicious excess. *Hibbard* v. *New York & Erie R. Co.*, 15 N. Y. 455.

A railroad company has the right to establish reasonable regulations for the government of passengers upon its trains, and to forcibly eject therefrom those who refuse to comply with such regulations. The regulations requiring passengers either to present evidence to the conductor of a right to a seat, when reasonably required so to do, or to pay fare, is reasonable, and for noncompliance therewith, such passenger may be excluded from the car. The wrongful taking of a passenger's ticket by the conductor of a previous train, does not justify a passenger in violating the lawful regulations upon another train. For the wrongful act in taking his ticket, he has a complete remedy against the company. Under such circumstances, it is the duty of the conductor of the second train to enforce the regulations of the company by putting the passen-

ger off, in case he persistently refuses to pay fare. A passenger, under such circumstances, has the right to refuse to pay fare, but, when demanded by the conductor, he must either pay or walk peaceably off the train, and his remedy is an action against the company for damages sustained by any detention or any humiliation suffered from having to walk off the train. If he waits for the application of force to remove him, he does so in his own wrong; he invites the use of the force necessary to remove him, and if no more force is applied than is necessary to effect the object, he can neither recover against the conductor or the company therefor. No one has a right to resort to force to compel the performance of a contract made with him by another. *Hibbard* v. *New York & Erie R. Co.*, 15 N. Y. 455; *Townsend* v. *New York Central, etc., R. Co.*, 56 id. 295.

In applying the law, as above stated, to the case under consideration, this question is presented: Was the conductor right in removing the plaintiff from the Brooklyn train at Morris Park, or had the plaintiff a right, under the circumstances, to remain in the car and be carried to his destination, without producing a voucher showing that he had that right, or paying a fare to the conductor? The removal of the plaintiff by the conductor of the Brooklyn train was not authorized, if the conductor had sufficient evidence of the plaintiff's right to ride. The conductor was entitled to evidence showing that the plaintiff had acquired a right to be transported on this train to Brooklyn, or to demand plaintiff's fare. But, under the circumstances of this case, we do not think there was an obligation upon the plaintiff to show the conductor that he (the plaintiff) had the physical possession of a ticket and to turn it over to the conductor, or pay his fare. The defendant should not be allowed to hide behind its own wrong on failing to furnish the plaintiff with a ticket, or a duplex ticket, and find immunity in its rule that a passenger must show a ticket or pay his fare, when, through no fault of his own, he had no ticket, and refused to pay his fare a second time, and when the conductor had sufficient evidence to assure

him of the purchase of a ticket by plaintiff, which gave him a right to be transported to his destination.

We think the testimony fairly raises this question whether the conductor of the Brooklyn train had sufficient evidence that the plaintiff was entitled to ride on that train to his destination, which, as a question of fact, should have been submitted to the jury.

The learned trial judge charged the jury that, " The plaintiff was wrongfully removed from that car, and he should be compensated for the injuries he sustained by reason of the removal; that is, for the injury to his person and to his feelings, if he sustained any." To this portion of the charge the defendant's counsel duly excepted.

The conductor of the Brooklyn train swears that there was considerable noise and confusion at the time the change was made at Jamaica, and that he failed to understand from the other conductor the fact that plaintiff had already paid his fare. He testifies that he only heard the conductor of the other train say, " something about giving up ten cents, and I gave ten cents to somebody. I can't swear to whom I gave it." Were the circumstances such as to justify a belief that he did hear and understand what the other conductor said? This question was one for the jury to determine. The conductor of the Brooklyn train does not deny that he paid plaintiff ten cents, and he testifies, " When the conductor called out, ' Give that man ten cents,' I knew I could get it back. That has happened before a number of times." It was presumable that it was because he did not have time to make the change. " Plaintiff testifies that the conductor came through and said, ' Here is your ten cents; I don't know what I am giving it to you for.' " And yet the conductor testifies that it was presumably because the other conductor could not make the change. Change for what, it may be asked, if not for money paid for a ticket or fare? The witness Russell testifies that the two trains were alongside of the same platform; that the platform was lighted, and that the conductor of the Long Island City train had his lantern in his hand, and pointed

towards the plaintiff, as he shouted to the other conductor, " This is all right; give this man ten cents." The conductor of the Long Island City train testifies that he called to the other conductor that " I had that man's ticket and owed him ten cents change; and that I would settle with him (presumably meaning the other conductor) when I got back to Jamaica." It does not appear how wide the platform separating the two trains was. The conductor of the Brooklyn train swears that the Long Island City train had " moved quite a ways away from me," at that time. The plaintiff's own testimony also indicates that the Long Island City train was in motion, leaving Jamaica, when plaintiff succeeded in finding the conductor of that train, and asked him for his duplex ticket and change, with which request the conductor of the Long Island City train swears he had not time to comply, and, therefore, shouted to the other conductor that " I had that man's ticket and owed him ten cents change, and that I would settle with him when I got back to Jamaica."

Although, as a passenger, plaintiff was compelled to change cars at Jamaica, yet both trains were owned and operated by the defendant, and the change was necessitated by the defendant's own arrangements. Identically similar tickets, with the exception of the name of the final destination, were issued to carry passengers from Queens to Long Island City or to Flatbush avenue, Brooklyn. Notwithstanding the change necessary at Jamaica, the fare was the same. The journey from Queens to Flatbush avenue, Brooklyn, was to all intents and purposes one continuous trip. It might be said that the conductor of the Brooklyn train stood in the same relation to the conductor of the Long Island City train that a second conductor would have occupied upon that train. The plaintiff used due diligence to secure tangible evidence of his right to a seat in the Brooklyn train. He sought the conductor to whom he had paid his fare, while the change was taking place at Jamaica, and was a witness as to what passed between the two conductors. In pursuance of the statements made by the first conductor to the second conductor, plaintiff received from

the second conductor the ten cents change that was his due. Was he not warranted in assuming, when he boarded the Brooklyn train, that he had secured the rights for which he had paid, and could with justice rely on the assurances and directions of the servant of defendant, tending to and designed to direct him and to assure to him such rights?

In the case of *Hamilton* v. *Third Ave. R. Co.*, 53 N. Y. 25, the plaintiff, by instructions of the conductor of the car upon which he had been riding and to whom he had paid his fare, changed cars, and was told by the conductor of the car to which he was transferred, upon entering the same, that no transfer ticket was necessary; that if he came from the other car, he could go on board of the second car and continue his journey on that car, without any additional fare. Subsequently, when he failed to produce a ticket, the conductor ejected him from the car. It was held by the Court of Appeals in that case that this statement of the second conductor was equivalent to an assurance that he could ride on the car under his control, without further payment of a fare, or evidence of a right so to do, and that the company would be liable for his wrongful ejectment from the car by the conductor who had given this assurance.

The case at bar, while not as strong as this point, much resembles the *Hamilton* case.

While the question whether the plaintiff was wrongfully or rightly removed, was, upon established facts, a question of law, we think it was the province of the jury, upon the evidence, to determine the facts, and that it was error for the court to take this question away from the jury and to charge that the plaintiff was wrongfully removed.

If the conductor of the Brooklyn train did not have the evidence of plaintiff's right to a seat, he had the right to eject the plaintiff, and the plaintiff's remedy was against the defendant for the breach of contract which occurred when the first conductor failed to give the plaintiff a duplex ticket before he boarded the Brooklyn train. Under these circumstances the defendant could not be held for an unlawful

assault, for the act of the conductor of the Brooklyn train in ejecting the plaintiff from that train. This action is one for assault, and nothing else. The conductor had a legal right to eject plaintiff from the train, if he was unlawfully there. The plaintiff's legal right to a seat on the train depended on questions of fact, which should have been submitted to the jury.

For the reasons above stated, the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event.

SEDGWICK, Ch. J., concurs.

Judgment and order reversed and new trial granted.