(64 App. Div. 46.)

PEOPLE ex rel. FLEISCHMANN v. CALDWELL, Sheriff.

(Supreme Court, Appellate Division, Fourth Department.   July 23, 1901.)

1. CONSTITUTIONAL LAW—LIBERTY—CARRIERS—TICKET BROKERAGE—PROPERTY.
    Laws 1901, c. 639, providing that no person shall sell a passage ticket
    giving any right to a passage on any railway train unless he is an
    authorized agent of the company running such train, and has received a
    certificate of authority therefor in writing from such company, conflicts
    with Const. art. 1, § 6, prescribing that no person shall be deprived of
    liberty or property without due process of law, since it deprives citizens
    of the liberty of engaging in the legitimate business of ticket brokerage.
2. SAME—POLICE POWER.
    Such act is not valid as a police regulation of the ticket-brokerage busi-
    ness, since it does not tend to promote the health, comfort, or welfare of
    society.
3. SAME—FRAUD.
    The fact that some dishonest persons have been engaged in the ticket-
    brokerage business, with the result that frauds have been perpetrated
    on both travelers and transportation companies, does not justify the
    legislature in depriving every citizen of the liberty to further engage in
    such business, as attempted by Laws 1901, c. 639.
4. SAME—POWER OF LEGISLATURE TO CONTROL CARRIER.
    Laws 1901, c. 639, prohibiting private individuals from selling railroad
    tickets, and forbidding the officers of a common carrier from supplying
    tickets for sale to any other than an authorized agent, is not a valid
    exercise of the power of the legislature to regulate the conduct of a rail-
    road company's business because it is a creation of the legislature and a
    common carrier.
5. SAME—RAILROAD TICKET AS PROPERTY.
    Whether a railroad ticket be a token or prima facie evidence of the
    contract of carriage, when sold it belongs to the person purchasing, and,

unless its use is in some way limited, it has the same quality as every other kind of property, and to deprive the holder of the right to sell the ticket deprives him of property.

Williams, J., dissenting.

Appeal from special term, Erie county.

Habeas corpus by the people, on the relation of Clarence Fleischmann, against Samuel Caldwell, sheriff of Erie county. From a final order of the special term of the supreme court discharging the relator from arrest, defendant appeals. Affirmed.

The relator, who for several years has been engaged in the business of ticket broker in this state, was arrested on the 28th day of May, 1901, and on the plea of not guilty was committed to the custody of the sheriff of Erie county for having violated chapter 639 of the Laws of 1901, entitled "An act to amend the railroad law in relation to tickets," in that on the 23d day of May, 1901, he sold a passage ticket giving the right to a passage and conveyance from the city of Buffalo, N. Y., to the city of Meriden, Conn., over the railroad of the Lehigh Valley Railroad Company from Buffalo to New York and over the railroad of the New York, New Haven & Hartford Railroad Company from New York to Meriden; the relator not being at the time an authorized agent of such railroad companies, and having no certificate of authority, in writing or otherwise, authorizing or empowering him to act as the agent for either of said railroad companies.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

John G. Milburn, for appellant.
Louis Marshall, for respondent.

McLENNAN, J. The respondent's contention is that chapter 639 of the Laws of 1901 is unconstitutional, and that, therefore, the order discharging the relator was properly made. That is the only question presented by this appeal. The act, so far as it is important to note, provides, in substance, that no person shall sell a passage ticket giving any right to a passage or conveyance upon any railway train unless he is an authorized agent of the company running such train, and unless he has received a certificate of authority therefor, in writing, from such company. Chapter 506 of the Laws of 1897, which is the same as sections 615 and 616 of the Penal Code, relates to the same subject-matter, and is substantially the same, as chapter 639 of the Laws of 1901, except that by section 616 the properly authorized agent of any railroad company may purchase from the properly authorized agent of any other railroad company a ticket for a passenger to whom he may sell a ticket to travel over any part of the line for which he is the properly authorized agent, so as to enable such passenger to travel to the place or junction for which his ticket reads. Provision is also made in the section for the redemption of unused tickets, the details of which it is unnecessary to refer to. The sections of the Penal Code above referred to were considered by the court of appeals in People ex rel. Tyroler v. Warden of City Prison, 157 N. Y. 116, 51 N. E. 1006, and were held to be unconstitutional. In that case, which was an appeal from an order in a habeas corpus proceeding, the relator, who had been engaged in the city of New York in the business of ticket broker, was arrested

for having received the sum of $6.30 as a consideration for a passage
or conveyance upon a ferryboat, train, and vessel from the city of
New York to the city of Norfolk, Va., and for the procurement of
a ticket giving absolute right of passage and conveyance upon such
ferryboat, train, and vessel, he not being at the time an authorized
agent of the owners or consignees of the vessel, or of the company
running such train.   The court held that the relator was improperly
arrested and detained, and the order remanding him to the custody
of the sheriff made at the special term, and affirmed by the appellate
division, was reversed, and the relator discharged.

First, it is important to ascertain whether or not the statute under
which the relator in the case at bar was arrested is, in its scope and
meaning, essentially the same as the statute which was condemned
by the court of appeals, and consequently subject to the same con-
demnation.   If so, it will be unnecessary, and certainly it would not
be useful, to enter upon a discussion of the general subject of the
rights of transportation companies or of ticket brokers in the prem-
ises.   In any event, the whole ground having been so thoroughly
covered by the discussion of the courts in this and sister states, the
argument may be considered as exhausted, and little more need be
done than to state the rule as we deem it settled by the latest dec-
laration of the court of appeals upon the subject.   It is urged by
the appellant that the vice in the act of 1897 which impelled the
court of appeals to declare it void in the Tyroler Case, supra, consist-
ed in the fact that by its terms it assumed to authorize the ticket
agents of any transportation company to purchase and sell the pass-
age tickets of all other transportation companies; in other words, it
authorized the ticket agent of any transportation company to engage
in the business of ticket broker as to the passage tickets of all other
transportation companies, while it denied such right to all other citi-
zens of the state; and that, inasmuch as such provision has been
eliminated from the statute here under consideration, it is not sub-
ject to the criticism held to be applicable to the former act.   All
will agree that the court of appeals in the Tyroler Case, supra, dis-
tinctly held that provision of the act to be violative of article 1, § 1,
of the state constitution, which provides that no member of the state
shall be disfranchised or deprived of his rights or privileges, unless
by the law of the land and the judgment of his peers; and also of
article 1, § 6, of the state constitution, which provides that no person
shall be deprived of life, liberty, or property without due process of
law.   After referring to those provisions of the constitution, and
calling attention to numerous authorities in which the meaning of
those provisions has been defined, the learned presiding judge, who
wrote the opinion of the court, said:

"Argument certainly is not needed, in the light of these decisions, to sup-
port the assertion that the 'liberty' of this relator and other citizens of this
state to engage in the business of brokerage in passage tickets is sought
to be interfered with by the statute under consideration, for brokerage in
such tickets has been a lawful business in this state for many years, and
many persons have pursued it.   It is still a lawful business, although the
right to engage in it is limited to such persons as may be appointed by the
transportation companies.   The statute is, therefore, in contravention of the

state constitution, and is void, unless its enactment by the legislature consti-
tuted a valid exercise of police power."

In reaching such conclusion the learned judge called attention to
the fact that at the present time great agencies are engaged in the
ticket-brokerage business, from whom tickets can be purchased over
a great portion of the transportation routes of the world; that the
traveling public in large numbers have come to make use of the
facilities afforded by such agencies, of which there are now very
many; and that, if the statute under consideration is valid, all such
companies must go out of business in this state, unless some trans-
portation company shall deem it wise to clothe them with authority
to act as their agents. The evil which it is suggested would follow
the enforcement of such a law consisted in the fact that under it
the business of furnishing passage tickets to the traveling public
would be confined to those persons who might be employed and desig-
nated as ticket agents by the transportation companies. The mere
words employed in or eliminated from a statute cannot be the test
of its true scope and meaning. If, under a strict interpretation of
the act of 1901, the same evils would follow as under the act of 1897,
and which were so pointedly set forth in the prevailing opinion of the
court in the Tyroler Case, supra, it cannot be important that the
provision of the former act against which the denunciation of the
court was especially directed was omitted from the subsequent act.
Under the act of 1897 the ticket agents of the Lehigh Valley Rail-
road Company not only were authorized to sell its tickets, but in-
stanter every ticket agent of every other transportation company
in the country became authorized to purchase and sell such tickets,
and all other persons were prohibited from engaging in such busi-
ness. Under the act now being considered it would only be neces-
sary for the Lehigh Valley Railroad Company to go to the expense
and trouble of constituting the other transportation companies its
agents for the purpose of selling its tickets, and precisely the same
results would follow. In other words, such corporation could say
to the New York Central & Hudson River Railroad Company, "We
constitute you our agents to sell our tickets, with power to appoint
such subagents as you, in your discretion, may see fit," and so as to
every other transportation company in the country, with the result
that precisely the same condition of things would exist, both as to
the traveling public and as to the individuals desiring to engage in
the ticket-brokerage business, as would have existed under the act
of 1897 had it not been declared void. The court of appeals could
not have held, or have intended to hold, that the act which was
being considered by them was void because of its terms, which per-
mitted a certain class to engage in the business of brokerage in
tickets to the exclusion of all others, if the court had deemed it
competent for the legislature to authorize the various transportation
companies to designate precisely the same persons as ticket brokers,
and only those who were referred to in the statute. In such case,
the same as under the former statute, "Cook's and Gaze's are among
the agencies that must go out of business in this state if this statute
can live, unless some transportation company shall deem it wise to

clothe them with authority to act as its agents." We think the decision in the Tyroler Case, supra, must be regarded as decisive of the proposition that it is not competent for the legislature to prohibit the purchase and sale of passage tickets over transportation lines, when such sale is not in violation of any contract made with the transportation companies upon the sale of such tickets by them. The decision not only condemns the feature of the act of 1897 to which attention has been called, and which is not present in the statute now under consideration, but almost as emphatically its other provisions, which are substantially re-enacted by the act of 1901. In the opinion of the court it is pointed out that ticket brokerage as a business has been in existence for years; that it has been, and continues to be, regarded as a lawful and legitimate business; that it has furnished lucrative employment for a large number of citizens, and has proved to be a great convenience to the traveling public; and it will be readily seen that all these desirable conditions must cease under the present statute, the same as under the act of 1897 had it been declared valid. The court then attempts to divine the purpose of the legislature in passing the act of 1897. First it is said it is claimed "that the traveling public and the transportation companies have been so defrauded by the acts of brokers in the selling of unused or alleged to be unused passage tickets as to call for legislation of a protective character, of which this statute is the outcome"; again, that the penal laws have not proven sufficient to wholly prevent such frauds; and again, that it is urged that the business enables the transportation companies to engage in unfair competition. It is shown most conclusively in the opinion of the court that the remedies for these suggested evils, if they exist, are not in procuring new or additional legislation, and especially of the character of the act in question, and they were not regarded as of sufficient importance to justify it; but, however that may be, it must be obvious that all the suggested evils to which attention is called would have been quite as effectually remedied by the act of 1897, had it been upheld, as by the act now being considered.

In discussing the police power, under which it was urged the statute could stand, the court said: "That power is very broad and comprehensive, and has not as yet been fully described, or its extent plainly limited, but it is exercised to promote the health, comfort, and welfare of society." It is then pointed out that the legislation complained of does not and did not fall within that category, and that such was not its purpose. The purpose of the statute in question in that respect cannot be regarded as differing in any manner from the statute which was being considered by the court of appeals. The court in the Tyroler Case further said:

"Nor can the contention be tolerated that, because there have been in times past dishonest persons engaged in the ticket-brokerage business, with the result that frauds have been perpetrated on both travelers and transportation companies, therefore the legislature can deprive every citizen engaged therein of the 'liberty' to further conduct such business. Stringent rules undoubtedly may be enacted to punish those who are guilty of dishonest practices in the conduct of such a business, and the machinery of the law put in motion for its rigorous enforcement; but to cut up, root and branch, a busi-

ness that may·be honestly conducted to the convenience of the public and the profit of the persons engaged in it, is beyond legislative power. If the law were otherwise, no trade, business, or profession could escape destruction at the hands of the legislature if a situation should arise that would stimulate it to exercise its power, for in every field of endeavor can be found men that seek profit by fraudulent processes. Transportation tickets have been forged, it is said. So have notes, checks, and bank bills. Railroad companies are no more bound to honor forged tickets than the alleged maker of a forged note is bound to pay for it. An innocent person, who suffers by parting with his money on a forged ticket, has his remedy against the vendor, just the same as has the bank that discounts a forged note. Such instances might be multiplied, but it would serve no good purpose, for it is well known that no business can be suggested through which innocent parties may not be occasionally victimized. But because of that fact honest men cannot be prevented from engaging in their chosen occupations."

This language, and all of it, applies with equal force to the law of 1901 as to the law of 1897, with respect to which it was used. And, finally, after calling attention to all the arguments advanced in support of the proposition that the enactment of the statute of 1897 was a proper and legitimate exercise of the police power of the state, the court said:

"I have now called attention to all the arguments that have been advanced in support of the claim that the provisions of the statute under consideration are so evidently intended for the public good as to constitute a valid exercise of the police power by the legislature, and those arguments seem so wholly without merit as to suggest that they constitute a mere pretext put forward to uphold legislation hostile to the 'liberty' of the citizen, as that word is used in the constitution."

An examination of the dissenting opinions in the Tyroler Case, supra, which exhaustively discuss every feature of the interesting question involved, it seems to us can leave no doubt that it was the understanding of the learned judges who wrote those opinions that the majority of the court had determined and intended to hold that the act of 1897, in its entire scope and meaning, was void and unconstitutional. Such, also, was the interpretation put upon the decision of the court by Mr. Justice Gildersleeve in the case of People v. Hagan, 71 N. Y. Supp. 461, recently decided by him. In the opinion in that case the learned justice said:

"The relator was a broker in passage tickets, and, if he could not be molested as such, under the act of 1897, I fail to see how he can be punished under the act of 1901 for the same offense. The two acts are largely identical, and, in the respects now under consideration, must be held to be unconstitutional by virtue of the doctrine laid down by the highest court of this state in the case above cited." People ex rel. Tyroler v. Warden of Prison, supra.

As before said, we have not deemed it necessary or useful to enter upon a discussion of the merits of the controversy which has arisen because of the enactment of the statutes referred to, or on account of similar legislation by the legislature of other states, but have simply endeavored to ascertain whether or not the precise question involved in this case has been passed upon and decided by the court of last resort in this state; and have reached the conclusion that the decision in the Tyroler Case, supra, is decisive of the case at bar, and that chapter 639 of the Laws of 1901, under which the relator was arrested, is unconstitutional and void.

It is proper, however, that two points urged by the learned counsel for the appellant, upon which considerable stress seems to have been laid as the foundation of his argument, should be especially referred to in this connection. It is said, in the first place, that the legislature has undoubted power to regulate the conduct of its business by a railroad company, because it is a creation of the legislature, and a common carrier. That may be true, but we do not see how it applies to this statute in any way. This statute limits the right of private individuals to sell railroad tickets. It forbids the passenger agent or any other officer of a common carrier to supply tickets for sale to any other than a regularly authorized agent, but in no respect whatever except that does it limit, regulate, control, or affect in any degree any railroad company or other common carrier with respect to its business of transporting passengers, or to the issue of its tickets; so that, granting to the legislature the greatest possible power to control the business of a railroad company, this statute cannot be considered in any respect to be an exercise of that power. A common carrier of passengers may now limit the use of a ticket to the day of its date (Elmore v. Sands, 54 N. Y. 512, 13 Am. Rep. 617), or provide that it shall only be used for a continuous passage (Hill v. Railroad Co., 63 N. Y. 101), or insert other reasonable conditions, which, if called to the attention of a passenger, creates the presumption that he accedes to their terms (Rawson v. Railroad, 48 N. Y. 212, 8 Am. Rep. 543). It might, in terms, make its tickets nontransferable. If it chose to do those things, its action would, to a very considerable extent, prevent the sale of its tickets by any one except its own agents. The legislature might undoubtedly require that these or similar conditions be put upon the tickets, so that they should not be transferable; and, if they attempted to do that, the business of ticket scalping would be to a very considerable extent destroyed. But nothing in this statute can operate in any possible way to affect the action of any common carrier, except in the one particular specified.

It is claimed, too, that a railroad ticket is not property, and for that reason to take away the right of the holder of one to sell it if he wishes does not deprive him of any property. There is no authority for that proposition. It was held in Hibbard v. Railroad Co., 15 N. Y. 455, that a passenger was bound to show his ticket whenever requested by the conductor to do so. Nothing else was decided by that case. It was quite true that one of the judges, in delivering the opinion of the court, said that the ticket remained the property of the railroad company; but no such proposition was necessary to the decision of the case, and it was not assented to by the other judges. It was held in Quimby v. Vanderbilt, 17 N. Y. 306, 72 Am. Dec. 469, that a railroad ticket was a token, rather than a contract; but no one suggested that, whatever it was, it did not belong to the person who paid for it, and received it from the railroad company. The same thing was held in the case of Rawson v. Railroad Co., supra, and in that case it was said that a notice printed upon the back of a ticket, called to the attention of the passenger, was evidence of the contract of sale.

In Nealon v. Railroad Co., 5 N. Y. St. Rep. 256, the general term of the Fifth department held that a notice, printed upon a ticket, that the defendants, in issuing it, acted merely as agent for the connecting company, was a part of the contract, and the defendant was entitled to the benefit of it. In Hibbard v. Railroad Co., supra, the same judge who held that a ticket was the property of the railroad company also said that it was as good in the hands of a stranger as it was in the hands of the person who paid for it. It is evident that, whatever may be the nature of the arrangement which is evidenced by the ticket, whether it be a token or prima facie evidence of a contract, when the ticket is sold it belongs to the person who buys it; and, unless its use is in some way limited, it has the same quality as every other kind of property. It follows that the order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except WILLIAMS, J., who dissents.